Freeman, J.,
delivered the opinion of the court.
Complainant filed her bill to enforce the collection of two notes given her by I. Z. Gibson, charging among other things, -that, a certain deed conveying slaves and other personal property to Mrs. Gibson, wife of said I. Z. Gibson, or rather to M. J. Wright, trustee for her, was fraudulent and made to hinder and delay his creditors in enforcing their debts. An attachment was issued in accordance with the prayer of the bill, and levied upon negroes, and other personal property, valued, as shown by the record, at about $2,900. I. Z. Gibson and Marcus J. Wright, as trustee, proposed to replevy this property and gave bond, with Arthur Connell and Jno. B. Frayser as sureties. This bond, after setting out the levy on the property, and stating its value to be $2,848.50, and that Gibson and Wright were desirous *208 to replevy the same, proceeds: “Now, therefore, if the said I. Z. Gibson shall well and truly, pay said debt and interest, and all costs, or the value of said property so attached, with all the interest thereon, if said court shall so decree, or so much thereof as said court shall order and decree, and in all other things comply with and perform the decrees of said court in said causes, then the above obligation to be void,” etc.
The original bill was filed in 1860, and the case remained in court after answers were filed until 1867, when it appears in the record that the death of both Gibson and wife was suggested. In the meantime, two other bills had been filed seeking similar relief against Gibson, in reference to other property in the name of his wife — the one by Hezekiah Cobb, the other by James B. Thornton — and on March the 11th, 1867, these three causes, as appears, were consolidated so as to be heard together, without prejudicing the rights or priorities of complainants in the several bills, or depriving any of said complainants of the right to take or use the deposition of the other complainants, if desired. It is recited in the same entry subsequently, that it appeard from the amended bill of -Cobb, and also was admitted, that Gibson and wife were both dead, intestate, leaving certain parties, naming them, their only children and heirs at law, and that they had been dead more than six months, and no person would administer on their estates, upon which it was ordered that the causes be revived against the heirs, and scire facias was ordered to *209 bring them before the court. Two sci. fas. were issued under this order, at succeeding terms, which were returned by the sheriff unexecuted, the parties not being found in Shelby county; no further effort was made to revive against the heirs.
On September 11, 1867, an order was made in the above consolidated causes (which appears - to have been made at chambers before the Chancellor), in which it was recited that it appeared “ from- the amended and supplemental bill of Cobb, that Gibson and wife have departed this life more than six months prior to this date, and to the amended and supplemental bill.” The facts required by the Code, sec. 2209, for appointment of administrators by the Chancery-Court, were also set forth, and it was stated that the court was of opinion that the prayer of the amended and supplemental bill should be granted, and that “it appeared to the court that Wm. H. Moore is a suitable person to be appointed such administrator,” of the estates of Gibson and wife, under sec. 2213 of the Code, which section provides that upon filing the bill, the court in term time, or. the Chancellor or Judge in vacation, shall appoint an administrator of the estate upon such terms as he may think best, and it was therefore ordered that said' Moore give bond and qualify as such administrator before the clerk and master, as required by the next section of the Code, 2214; but, it is added, it not appearing to the Chancellor in what, if anything, the personal property of the said Gibson and wife consists, nor the value thereof, so as to determine the amount of the bond *210 with sureties to be given by Moore as administrator, the clerk is ordered for the present to take the individual bond of said Moore for $1,000, and qualify him as said administrator, leaving a further bond, with security, to be given hereafter when the said Moore shall have filed his inventory of said estates, if there should be any/ property or effects thereto belonging. It was further ordered that “Moore be, and is hereby made, a party to the above entitled causes.” This order was made, as we have said, on the 13th of September, 1867. On the 21st, Moore gave the bond required before the clerk and master, and qualified by taking the oath required in such cases.
November 29, Moore, as administrator, reported to the court, as required by this interlocutory order, as the entry states, “ in the above entitled causes,” that no personal property had come to his hands or knowledge, and that as far as he knew, there were no such assets, and consequently he could make no inventory. It' will be observed that this entry appears as a regular entry in the above causes, and Moore, as administrator, makes this report under the order made in the same.
At March Term, 1868, a final decree was made in the case of Moore, as administrator, and against Wright, as trustee, together with the sureties on the replevin bond, Collier and Frayser. In the recitals of the decree, however, the sums ascertained to be due are, on the first note, $1,416, and on the second, $2,648; but decree is only given for the sum of $2,648. From this decree against him as surety on *211 the replevin bond, Frayser, alone has prosecuted his writ of error to this court.
It is obvious from this statement of the ease, that the sureties on the replevin bond are bound by the result of the litigation between Mrs. Barry and Gibson, the debtor; 2 Head, 570. They were not parties to the original bill, had no interest in that litigation, nor right to contest the claim of Mrs. Barry against Gibson. In this respect they were strangers to the suit, and to the decree so far as it settles the rights of those parties. This being so, Frayser, by his writ of error, can only occupy the position of one making a collateral attack upon a judgment or decree to which he was not a party, in so far the decree settles the liability of Gibson or his estate to Mrs. Barry. In this view, the only question is,' not whether the decree was regular, or even clearly erroneous, against Gibson or his representatives, but whether there was any decree at all, that is whether it was or was not absolutely void, and as such, amounting to no decree, and therefore by the terms of his bond rendering the decree against him on his bond erroneous and voidable, on review in this court. If the court, then, had jurisdiction of the subject matter and the parties, the judgment cannot be held void in this mode of attack, although the proceedings were irregular and erroneous, and reversible on appeal or writ of error. 2 Head, 570; 4 Sneed, 371.
Is, then, the decree against Moore, administrator of Gibson, void for the causes urged in argu *212 ment of counsel, or for any other causes apparent in the record ?
First, it is insisted that by the Code, secs. 2209-10, and subsequent sections, authorizing the Chancery Court, or Chancellor in vacation, to appoint an administrator, only give the authority on bill filed for the purpose. On examination of the sections of the Code, including the whole of ai’t. 11, ch. 2, on this subject, we conclude this is true. - By sec. 2210 it is provided, “that to this end, that is, the appointment of an administrator, the next of kin or any creditor of the deceased may file a bill, ’etc., praying for the appointment of an administrator, with such other ■ specific prayers as are required, and for general relief; ” and by the next section it ■ is required if the bill be filed by a creditor, it must be on behalf of all other creditors who may wish to come in and be made parties on the usual terms; and by the last section of the article it is provided, “the administration of such estate shall be conducted under the authority of the Chancery Court, in the same manner and under the same rules as the administration of an insolvent estate.”
On looking into the record, we find that on the 22d of March, 1860, an amended and supplemental bill was filed by Cobb against the heirs of Isaac Z. Gibson, making the proper allegations for the purpose, in which it was stated that W. H. Moore had consented to become the administrator on the estate of Gibson, with a prayer that he be so appointed under the proyisions of the Code.
*213 In pursuance of this bill the appointment was made, as hereinbefore stated, on the 13th of September, 1867. It will be observed that by order of the Chancellor, this cause of Cobb, had in March before, been consolidated with the case of Barry v. Gibson et als., and the amended and supplemental bill was filed as part of the proceedings in said consolidated causes, though by Cobb alone.
IVhile it was irregular and possibly erroneous to make the proceeding for the administration a part of the other cases already pending, still, at most, it was • but an irregularity, and could not have the effect to render the appointment of the administrator by the Chancellor void. The suits pending of Barry v. Gibson et als., and Cobb v. same, were both for enforcement of debts, and had the bill been filed by the creditors as a separate bill for the • administration of the estate in chancery under the sections above referred to, they might well have set out and maintained such claims as are found in their original bills, as part of such bill for appointment of the administrator. These facts cannot then render the decree against Moore, administrator of Gibson, void.
It is insisted, that even if Moore was duly appointed administrator, yet he was not a party to this case, either by service of process to bring him in, or by voluntary appearance. Assuming, however, as we have held, that the amended and supplemental bill was a part of the proceeding in these cases as consolidated, and that they might be conducted together without rendering the proceeding void, then, by *214 see. 2216 of the Code, it is provided that “such administrator, when appointed, shall be a party to the proceedings in court, and shall be bound by any decree or order made in the cause.” This would make him bound by the decree made in the case, and a party to it by virtue of his appointment; and the order of the Chancellor at chambers directing that he be a party to the cause was unnecessary, and only a formal direction as to a matter which the law did without any order. There is therefore nothing in the objection, that the Chancellor ordered Moore to be made a party on the 13th of September, when he only gave his bond and took the oath as administrator on the 21st of September, eight days after the order. He did give a bond such as the Chancellor required of him on the 21st of September, and made his report as directed by the order of the chancellor, as to the assets of the estate, entitled as in these cases, and certainly submitted to the jurisdiction of the court, and recognized himself as a party to this cause up to the time of the final decree, and has not appealed or complained of said decree up to the present time.
The surety on the replevin bond is certainly bound by the result of this litigation with his principal, or his personal representative. We need not refer to the cases cited by counsel, in this opinion. — suffice it to say, we have examined them, and find nothing that we think militates against the views herein expressed. The only other question presented is, as to the propriety or validity of the judgment or decree on the replevin bond against Frayser the surety.
*215 By sec. 3509 of the Code, it is provided that the defendant to an attachment suit may always re-plevy the property by giving bond, payable in double the amount of the plaintiff’s demand, or, at defendant’s option, in double the value of the property attached, conditioned to pay the debt, interest and costs, or the value of the property attached, with interest, as the case may be, in the event he shall be cast in the suit. This bond, by a subsequent section, is “to constitute a part of the record” in the case, and then it is provided: “The court may enter up judgment or decree, upon the event of recovery by the plaintiff, against the defendant and his sureties for the penalty of the bond, to be satisfied by delivery of the property or its value, or payment of the recovery, as the case may be; and then, by sec. 3515, the death or destruction of the property without any fault of the defendant, after the replevy, is no defense to the liability on the . bond.
By the first section, though it is not very clearly expressed, the defendant has his option, when he re-plevies the property, to give his bond either in double the amount of the plaintiff’s decree, or in double the value of the property attached, conditioned, to pay the debt, interest and costs, if given for double the amount of plaintiff’s demand, but if for the value of the property, conditioned to pay the value of the property attached, with interest, as the case may be, in the event of his being cast in the suit. If the bond is given for double the value of the property, then the court may render judgment or *216 decree against the defendant for the penalty of the bond, to be discharged or satisfied by delivery of the property or its value. In the event the bond is given for double the amount of plaintiff’s demand, then the decree is for the penalty of the bond, to be satisfied by payment of the debt, but not exceeding the penalty of the bond.
We think this the correct construction of the sections we have quoted, taken in connection with sec. 3535 of the Code on the same subject.
The condition of this bond is, that if the said Gibson shall well and truly pay said debt and interest and costs, or the value of said property so atttached, with all the interest thereon, or so much thereof as said court shall order and decree, and in all other respects comply with and perform the decree of said court in said cause, then to be void. This bond is clearly a bond for the payment of the debt, interest and costs, as it recites the filing of the bill, that it claims among other things that Gibson is indebted to complainant in the sum of $1,872, and its penalty is $3,750, being only about six dollars more than double the amount of the debt. If it had been for the value of the property, or so intended, then the penalty should have been in double the value of the property, which is valued at $2,948.50, so that the penalty of the bond would have been $5,897. This being so, the court properly rendered the decree for the amount of the debt and costs against Moore, administrator of Gibson, and against Frayser and Collier, the sureties on the bond; the sum so decreed being *217 $2,648.90, and less than the penalty of the bond. This view of the case relieves us from an extended notice of the argument of counsel, based on the supposed doctrine of the case of Green v. Lanier, decided at last term. It suffices to say, that in that case the only question really decided was, that the bond that had been given was not a replevy bond, but only a common law bond, not being conditioned as required by law, but for the delivery of the property levied on, as may be seen by the terms of the bond in the record of that case. In that view of it, the principle properly applied, that where the performance became impossible by the act of God, or by requirement of the law of the land, the party was released. 5 Sneed,685; 2 Sneed, 370.
What' was said by Judge Nelson, in the opinion in Green v. Lanier, as to the effect of emancipation of slaves in case of a replevy bond, under see. 3509 and subsequent sections of the Code, was clearly beyond, and outside of the case in hand, and not authority except simply as the views of the judge delivering the opinion might be deemed of weight.
We held at last term in Nashville, in case ot Cheatham v. Galloway, that the execution of the re-plevy bond by defendant operated to discharge the property from the custody of the law, and render it liable to other attachments, and this on the principle that the bond was a substitue for the property in the way of personal security, and that the provision, that in case the defendant has given bond for the value of the property, the decree may be for the penalty of the bond, *218 to be satisfied by delivery of the property or its value, is a privilege of the defendant, if he is able to take advantage of it by tendering the property. This is obviously the true construction of these provisions of the Code, especially when giving full effect to the section, which provides that “the death or destruction of the property, without any default of the defendant, after the replevy, is no defense to the liability on such bond, the principle of the provision being that even if without any default on his part, but by act of God, as death of the property, or its destruction without his fault, he finds himself unable to deliver the property, he must be bound on his bond, having taken this risk on himself by interposing the bond between the creditor and his lien by attachment on the property, thus releasing the property from the custody of the law, where it would have been at risk of the creditor.
The cases of Green v. Smith, 4 Col., 437, and Mosely v. Baker, 2 Sneed, 369, were on bonds “for the forthcoming of the property to answer the orders and decrees of the court, and not replevy bonds in cases of attachments levied. These cases were correctly decided, and the parties properly held not liable for return of the property, the return of it having been rendered impossible by death of the slaves in one case and emancipation in the other, but have no application to a case like the present, on a bond replevying property attached, with conditions such as are found in the bond before us.
Other questions are presented on the validity of the attachment which we need not consider, as we think *219 that question is not before us for decision in the aspect of this case as presented in the record.
The result is, that the writ of error must be dismissed and decree entered for complainant.
A motion having been, at a subsequent day, made to modify the decree entered in pursuance of the foregoing opinion, Deademck, J., delivered the following opinion, holding that the decree in the court below having been for a sum less than the value of the property, interest was properly added in affirming the decree here, although thereby the amount was made greater than the value of the property:
The decree was entered during the present term against Frayser, who was surety for Gibson and Wright upon a replevy bond of 13th of August, 1860,
The value of the property attached and replevied is stated in the bond to be $2,948.50.
In 1868, when the decree was rendered in the Chancery Court, complainant’s debt was $2,648.90. Since the cause has been pending here the accrued interest made the total of complainant’s recovery at the present term $3,292.10.
The' modification asked for is, that the recovery against the surety shall be abated, so as not to exceed, in all, the value of the property attached, the conditions of the bond being that if said Gibson “shall well and truly pay said debt and interest, and all cost, or the value of said property so attached, with all the interest thereon if said court shall so decree, or so much thereof as said court shall order and decree, and in all other things comply with and per *220 form the decrees of said court in said cause, then the above obligation to be void.”
The debt' due to complainant was less than the value of the property attached at the time of the rendition of the decree of the Chancery Court, and it is larger now only because of the interest which has accrued thereon.
For the surety, it is argued that he can only be held liable for the ascertained value of the property replevied. We are of opinion there are several conclusive objections to this construction of the bond. The decree here, is an affirmance of the decree below, which was for $2,648.90, less than the value of the property, and was a determination of the surety’s liability on the bond, and it is this liability that bears interest as a judgment or decree, not interest accruing on the bond; besides, the bond, by its terms, makes the surety liable for the value of the “property attached, with interest theron, if the court so decree,” etc., and contains the further and comprehensive obligation to comply with and perform in all things, the decree of the court in said cause.
For these reasons, we think the - decree is proper as heretofore entered, and refuse the motion to modify it.